This is an election contest. In July of 1984, William Persons was elected to the Hurtsboro City Council by a three-vote margin. The unsuccessful candidate, Edna Hawkins, filed a contest of the election on the grounds that she would have been elected but for the wrongful failure of voting officials to include certain challenged votes among those tabulated in determining the winner of the election. The trial court ruled in Persons's favor. We reverse.
Alabama law requires city clerks to publish a list of qualified voters at least five *Page 1073 
days before any municipal election and to post copies of the list in at least three public places in the municipality. Section 11-46-38, Code of Alabama (1975). If an elector's name is not on the voting list, election officials should not permit him to vote unless he presents a certificate from the Board of Registrars or unless he votes a challenge ballot. Section 17-4-127, Code of Alabama (1975). A challenge to an elector's vote may be made by any election inspector or qualified elector who knows or suspects that a person who is not duly qualified to vote will attempt to cast a ballot. If an elector has been challenged, election officials are not supposed to allow the challenged voter to cast a ballot until he takes an oath affirming his right and entitlement to vote and he identifies himself in the manner set out in Section 11-46-41. Section11-46-38, Code of Alabama (1975). If a challenged elector subscribes to the oath and properly identifies himself, his ballot must be received and counted as if he had not been challenged. Section 11-46-41 (e), Code of Alabama (1975). If a challenged elector refuses to take the oath or fails to properly identify himself, his vote should be rejected and not counted. Section 11-46-41 (f), Code of Alabama (1975).
The issue in this case concerns the validity of votes cast by challenged voters who were not required to subscribe to the oath prescribed for use in municipal elections.[1] Some of the challenged voters were allowed to vote without being required to take the oath; others were given the oath prescribed for general elections[2] instead of the one prescribed for municipal elections. All of the voters in question would have been entitled to vote if they had subscribed to the proper oath.[3]
Hawkins argues that *Page 1074 
it is incumbent on the election officials to administer the proper oath, that a voter should not be disfranchised by the mistakes of election officials and that, in any event, any deficiencies in the administration of the oath were cured by the testimony of the voters, who during the trial of this case affirmed under oath their right to vote. Persons argues that election statutes are to be strictly construed. In effect, he takes the position that a voter is not entitled to have his vote tabulated when election officials fail to follow the proper procedure with regard to his vote. The trial court agreed with Persons. We agree with Hawkins.
The genesis of this dispute lies in the town clerk's preparation of the voter list. In preparing for the elction the town clerk compiled a list of those registered to vote and, after receiving opinions from various citizens as to who among those registered were actually residents of the city, she compiled a list of eligible voters for the municipal election.
During the course of the election the clerk was called to the polling place to answer a question and while there she discovered that voters who were not on the list were being added to the list and allowed to vote without being required to produce identification and take the oath for challenged electors. Fifteen persons whose names were not on the official poll list had been added to the list and were allowed to vote. Eleven of those persons voted for Hawkins. The votes of those who were added to the list were tabulated along with the other votes. Upon discovering that the procedure for handling challenged electors was not being followed, the clerk admonished the polling officials to require those not on the voter list to take the oath and furnish the requisite identification before allowing them to cast ballots. Twenty-three persons were then given the oath in the form prescribed for general elections. Of those 23 votes, 20 were cast for Hawkins, one was cast for Persons, and two voters did not vote for the seat in question. The votes of those 23 people were not included in the final tabulations. If they had been included in the tabulations, Hawkins would have been elected.
The construction and effect of the election laws advocated by Persons are not supported by either the wording or the intent of the statutes. Section 11-46-41 (f) states that if a challenged elector refuses to take the oath his vote shall be rejected. None of the electors in question refused to take the oath. Person's interpretation places the burden of recognizing when the oath is required and of knowing the contents of the oath on the individual elector instead of on the election officials. The statute, however, explicitly places on the election officials the duty to prevent the challenged voter from voting without first taking the oath, to inform the challenged voter of the consequences of swearing falsely to the oath, and to "tender, read and administer the oath" to the challenged elector. Sections 11-46-38 and 11-46-41, Code of Alabama (1975). It is patently unreasonable to expect voters to know to bring copies of the oath with them to the polls when they wish to vote, on the chance that they will be challenged when they attempt to cast their ballot. Challenged electors who are duly registered and eligible to vote should be able to reasonably rely on election officials to inform them of their need to make the oath and to administer to them the oath required by law.
A person is eligible to vote in a municipal election if he is a qualified elector of Alabama who has resided in the city in which he seeks to vote for at least 30 days prior to the election and if he has properly registered to vote in the county in which the city is located at least 10 days before the election. See Haas v. McCrary, 399 So.2d 298, 300 (Ala. 1981); Section 11-46-38, Code of Alabama (1975). The voters in question were qualified electors who were properly registered to vote and who had met residence requirements. Upon being challenged, they were legally entitled to vote upon giving an oath affirming their qualifications and upon providing the requisite identification. If we were to affirm the trial court's judgment, we would, in effect, *Page 1075 
grant election officials the power to disfranchise citizens by challenging them and then by allowing them to vote without first informing them of the need to take the steps to vote a challenge ballot or by giving them the wrong oath. The pernicious implications of such a ruling are obvious. The right of an elector to have his vote counted should not be denied because of the mistakes of election officials. Pope v. Howle,227 Ala. 154, 157, 149 So. 222, 225 (1933).
We agree with Hawkins that whatever defects existed as a result of the voters' casting challenge ballots without first making the required oath were cured by the electors' sworn testimony at trial as to their qualifications. The obvious purpose of the challenge procedure is to provide a mechanism to prevent those who are not qualified from voting. Surely that end was more fully served here by the challenged electors when in open court they gave sworn testimony as to their eligibility to vote and were subject to cross-examination than it would have been by their making to the prescribed oath.
REVERSED AND REMANDED.
ALMON, BEATTY, ADAMS and HOUSTON, JJ., concur.
[1] The oath which election officials are required to administer to challenged voters in municipal elections is as follows:
 "`State of Alabama, county of _____. I do solemnly swear (or affirm): 1. That I am a duly qualified elector under the Constitution and laws of the state of Alabama. 2. That I have resided in the state of Alabama 30 days next preceding this day. 3. That I have resided 30 days in this county next preceding this day. 4. That I have actually resided 30 days in this ward next preceding this day, or within 30 days next preceding this day have removed from this ward to another ward in this incorporated town or city, and would have been entitled to vote but for such removal; I am registered to vote in this ward (county precinct). 5. That I am 18 years of age or upwards. 6. That I have not been convicted of any crime which disfranchises me. 7. That I have been duly registered. 8. I know of no reason why I am not entitled to vote. 9. I am generally known by the name under which I now desire to vote, which is __________. 10. I have not voted and will not vote in any other ward (or if the ward has been divided into districts, in any other voting district) in this election. 11. My occupation is _______________ the name of my employer is __________. 12. My residence is __________ (if in a city or town, give street number). 13. During the last 30 days I have resided at _______________. 14. That __________ and __________ have personal knowledge of my residence in the State of Alabama for 30 days, in this county for 30 days and in this ward for 30 days next preceding this day. This affidavit has been read to me. So help me God.'" Section 11-46-41 (c), Code 1975.
[2] The oath prescribed for use in elections generally is as follows:
 "State of Alabama, County of _____. I do solemnly swear (or affirm) that I am a duly qualified elector under the constitution and law of the State of Alabama. 2. That I am 18 years of age or upwards. 3. That I have not been convicted of any crime which disfranchises me. 4. That I have been duly registered. 5. I know of no reason why I am not entitled to vote. 6. I am generally known by the name under which I now desire to vote, which is _______________. 7. I have not voted and will not vote in any other precinct (or if the precinct has been divided into districts, in any other voting district) in this election. 8. My occupation is __________, the name of my employer is _______________. 9. My residence is __________ (if in a city or town give street number). 10. That _____ and _____ have personal knowledge of my residence in the State of Alabama. 11. This affidavit has been read to me. So help me God." Section 17-12-3, Code 1975.
[3] Defendant Persons also presented evidence that five persons on the voting list who voted for Hawkins did not live in the city limits. The trial court ruled that those votes should not have been counted. We agree that Hawkins was not entitled to have those five votes counted.